144 P.3d 597

**In the Matter of Jane DOE and Others: Children Under Eighteen Years of Age.**

**State of Idaho, Petitioner–Respondent,**

v.

**John Doe, Respondent–Appellant.**

No. 31266.

Supreme Court of Idaho,
Pocatello, September 2005 Term.

Sept. 25, 2006.

Ronald S. George, Pocatello, for appellant.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent.

TROUT, Justice.

This is a case involving termination of a father's parental rights. The biological father, John Doe, appealed the magistrate judge's order terminating his parental rights to the district court. The district court upheld the parental termination order. Doe appeals, requesting review of the magistrate judge's findings, conclusions and order of termination.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Doe's child, Jane, was born on August 8, 1998. Throughout Jane's life, Doe has had minimal physical contact with her. Jane has four half siblings (Doe is not the father of any of them), three of whom were also involved in the termination proceeding. The parental rights of Jane's mother (Mother) were terminated as to all four children, and that decision is not subject to this appeal. Because this appeal only involves Doe's parental rights, the facts will primarily focus on him rather than Mother, Jane's half-siblings, or their fathers.

In June 2000, Doe was sentenced to probation for felony domestic battery. He received home monitoring, but while on the program, he cut off his ankle bracelet and left the area. A year later, Doe was found to have violated his probation, and it was revoked by the sentencing court. Doe made a few attempts to have contact with his daughter during his incarceration by sending her letters, prison-made arts and crafts, gifts, and requesting visitations with her. At the time of the parental termination trial, Doe was scheduled to be released from prison on June 16, 2004.

In March 2002, the Department of Welfare (the Department) sought legal custody of Jane because of perceived failings in Mother's abilities as a parent. The Department attempted to reunify Jane and Mother, but made no contacts with or attempts to involve Doe, as he was imprisoned during this time. On April 17, 2003, the Department filed a petition to terminate the parental rights of Mother and the various fathers of the four children, including Doe. On September 16, 2003, the magistrate judge terminated Doe's parental rights based upon a finding of abandonment and neglect. The day after the magistrate judge's decision, Doe filed a notice of appeal to the district court. On September 17, 2004, the district court issued its decision on appeal, affirming the magistrate judge. Doe then filed a timely appeal to this Court.

## II. ANALYSIS

### A. Standard of Review

■ Where the issues before this Court are the same as those issues considered by the district court sitting in an appellate capacity, this Court will review the record with due regard for, but independently from, the district court's decision. *Doe v. Roe,* 133 Idaho 805, 807–08, 992 P.2d 1205, 1207–08 (1999).

The underlying action comes to this Court pursuant to a petition filed under Title 16, chapter 20 of the Idaho Code, which provides for the termination of parent-child relationships on either a voluntary or an involuntary basis. "Implicit in [the Termination of Parent and Child Relationship] act is the philosophy that wherever possible family life should be strengthened and preserved...." I.C. § 16-2001.

■ In Idaho at the time the petition in this case was filed, the statute provided that the State may petition the court for termination of the parent-child relationship when it is in the child's best interest and any one of the following five factors existed: (a) abandonment, (b) neglect or abuse, (c) lack of a biological relationship between the child and a presumptive parent, (d) mental incapacity of the parent, or (e) where termination is in the best interest of the parent. I.C. § 16-2005.[1] Each statutory ground is an independent basis for termination. *In re Aragon,* 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When the State intervenes to terminate the parent-child relationship, the requisites of due process must be met. *In re Baby Doe,* 130 Idaho 47, 50, 936 P.2d 690, 693 (Ct.App. 1997). This requirement necessitates the State prove the grounds for terminating a parent-child relationship by clear and convincing evidence. *In re Bush,* 113 Idaho 873, 876, 749 P.2d 492, 495 (1988).

■ Due process requires us to determine if the magistrate judge's decision was supported by substantial and competent evidence. *Doe I v. Doe,* 138 Idaho 893, 900, 71 P.3d 1040, 1047 (2003). Substantial, competent evidence is "such evidence as a reason-

---

1. Idaho Code § 16–2005 has since been amended.

able mind might accept as adequate to support a conclusion." *Folks v. Moscow School Dist. No. 281,* 129 Idaho 833, 836, 933 P.2d 642, 645 (1997). Therefore, we must conduct an independent review of the record that was before the magistrate court. *Roe Family Services v. Doe,* 139 Idaho 930, 934, 88 P.3d 749, 753 (2004). In a termination proceeding, our review parallels the trial court burden of proof when resolving the issues before it— clear and convincing evidence. *Bush,* 113 Idaho at 876, 749 P.2d at 495. "Obviously, the substantial evidence test requires a greater quantum of evidence in cases where the trial court finding must be supported by clear and convincing evidence, than in cases where a mere preponderance is required." *Id.* Moreover, the magistrate's decision must be supported by "objectively supportable grounds." *State v. Roe,* 142 Idaho 594, 599, 130 P.3d 1132, 1137 (2006).

## B. Termination of Doe's Parental Rights

In the instant case, the State sought to terminate Doe's parental rights because he allegedly abandoned and neglected his daughter. The magistrate judge agreed with the State and held there was clear and convincing evidence that Doe had both abandoned and neglected his daughter, and that it was in the best interests of the child that the relationship be terminated. On appeal, Doe asserts the magistrate judge erred in finding that the State presented clear and convincing evidence that he abandoned and neglected his daughter and contends that the similarities between his case and *Doe v. State,* 137 Idaho 758, 53 P.3d 341 (2002), mandate that we vacate the magistrate's order terminating his parental rights.

While the magistrate judge's opinion addresses both grounds for the termination, abandonment and neglect, it is only necessary that one of the grounds be supported by the evidence. *Roe v. Doe,* 142 Idaho 174, 179, 125 P.3d 530, 535 (2005). Because there is clear and convincing evidence to support the trial court's determination that Doe had neglected Jane, we address only that ground.

The magistrate judge made the following factual findings relating to Doe's conduct pri-

or to his incarceration, which support the ultimate finding of neglect:

(1) When the family was together, no parent was capable of:

   a. Providing a stable home environment for the children

   b. Providing support for the children

   c. Complying with the law and requirements of society [or]

   d. Educating the children and teaching them to be productive law abiding citizens.

(2) "When the family resided with [Doe] ... there was a lot of violence in the home" and

(3) "Testimony was that [Doe] was regularly intoxicated."

The magistrate judge also found that reunification efforts were impossible because there was no parent or combination of parents who could provide a stable home environment, support or education and training, and indeed the parents were not capable of "complying with the law and requirements of society."

■ There is ample evidence in the record to support these factual findings. First, between Jane's birth in August of 1998 and Doe's initial incarceration in county jail in June of 1999, Doe had the opportunity to provide for the "health, morals and well-being of his daughter." Instead, during the first year of his daughter's life he saw her sporadically, totaling a period of six weeks, clearly supporting the magistrate judge's finding that Doe was incapable of providing a stable environment and support for his daughter. This finding is further supported by the fact that in June 2000, after spending a year in the county jail, Doe was given a second chance to be a stable presence in Jane's life, as he was placed on probation with a home-monitoring system. Again, he failed to provide any type of consistent parental presence, this time cutting off his ankle bracelet and absconding from the state where he remained out of contact with his daughter. Indeed he provided no support or care throughout this time and was then apprehended a year later and placed in prison for violating his probation. The nominal

amount of time he spent with his daughter and his inability to comply with the law is contrary to providing for the health, morals and well-being of Jane. Doe spent only six weeks with Jane, out of a possible two years where he was free from incarceration and the very act of absconding intentionally cut off all contact with Jane.

Next, even during the minimal periods of time spent at the family home, the record contains evidence of incidents of Doe's violence and the detrimental effect of this conduct on his family and specifically, Jane. Doe admitted that during an argument with Jane's mother, where he suspected she was not carrying his child, he punched her in the stomach, knowing she was five months pregnant with Jane. Doe irrationally attempted to defend his behavior by testifying at trial, "I didn't mean to punch her in the stomach ... I was trying to punch her in the solarplexis [sic]," or, in other words, that he missed. Mother testified that when Doe "slugged" her in the stomach, he told her the child was not his. This conduct alone shows a complete disregard for the "health, morals and well-being" of his unborn daughter. Even if punching Mother in the stomach while she was pregnant with Jane does not constitute "violence by Doe toward Jane," this is not the standard for a finding of neglect. Neglect is defined as "a situation in which the child lacks parental care necessary for his health, morals or well-being...." I.C. § 16–2005(b). "The statute does not require or suggest that a child suffer demonstrable harm before the parent-child relationship can be terminated." *Doe v. State, Dept. of Health and Welfare*, 122 Idaho 644, 645, 837 P.2d 319, 320 (Ct.App.1992). Rather, infliction of perpetual domestic violence, even if not directed at the children, supports a finding of parental neglect as it provides for an unstable and dangerous home environment. *Id.* at 646, 837 P.2d at 321.

Doe also admits that the very reason for his incarceration was committing felony domestic battery against Mother. When asked what happened he testified: "I took off my watch and I threw it at her and I guess I threw a wind chime at her." Mother testified that she and Doe were "drinking and he got abusive," "beat her up" and gave her a "head concussion." When asked what he was charged with as a result of this incident, he testified: "Felony domestic battery. I guess they had just changed the law because the previous one was only a misdemeanor domestic battery." Doe then admitted he also had two prior misdemeanor domestic battery convictions. He also acknowledged at trial that he thought the abusive relationship he had with Mother was detrimental to the children.

Mother testified that Doe was abusive to her while the children were home "on several occasions," causing bruising, bleeding, sometimes a fat lip and on two occasions, head concussions. Although Doe disputed Mother's characterization as to the frequency of violence, Doe admitted that he pushed, shoved and slapped Mother on a number of occasions, which would sometimes bruise her body. When asked if he left marks on Mother, he testified: "My wedding band might have. I'm not sure." Mother testified that he physically abused her twice while she was pregnant with Jane.

There is also evidence in the record to support the trial court's finding about Doe's intoxication. The magistrate judge noted in his findings that "[t]here had been a particularly nasty incident that had taken place at the time of the birth of [Jane] because of [Doe's] belief that he may not have been the father." The record includes testimony from the oldest daughter that "[w]hen [Doe] was drinking he had went to the hospital when [Jane] was born and started arguing with my mom saying that [Jane] wasn't his and he tried to kill her." In fact, the magistrate judge found that Doe "was regularly intoxicated." There was testimony that he would get "really drunk" about once a week, drinking during other times of the week and that when he got drunk he would get into physical fights with Mother in front of the children. It is difficult to imagine a worse, detrimental and dysfunctional family relationship than that which existed between Jane and her father prior to his incarceration for beating up her mother. Obviously, Doe's later imprisonment simply exacerbated the neglect he had already clearly demonstrated.

Ultimately, the magistrate judge concluded that "[N]o reunification efforts, no matter how great, would have worked to accomplish reunification of [Jane] with [Doe] in the statutory time." A finding that reunification is not a viable option lends support for the magistrate judge's ultimate decision to terminate Doe's parental rights. It is obvious from the record that Doe's neglect, violence and drinking were having a highly detrimental effect and there was no point in further considering reunification.

■ Doe has had little or no contact with his daughter since June of 2000, about six years ago when she was less than two years old and then only sporadically for a total of six weeks. She now has an opportunity to be adopted by responsible parents with a stable home environment, in marked contrast to what she has known for the first seven years of her life. The magistrate judge's findings would have been much more helpful if done in more detail. However, the findings are sufficient to indicate the trial court's basis for finding neglect and are amply supported by the record.

On appeal, Doe also argues this case is controlled by our decision in *Doe v. State*, 137 Idaho 758, 53 P.3d 341 (2002), in which this Court reversed the trial court's decision to terminate the parental rights of an imprisoned father. Unlike in *Doe*, there is sufficient evidence here of this father's neglect of Jane prior to the time he was imprisoned, so that it is not necessary to evaluate his conduct while imprisoned. The half-hearted efforts made to contact Jane during that time are simply not enough to overcome the prior years of neglect. Moreover, in the *Doe* case, the child was not even born until the father was incarcerated and blood tests established the child was his. Thereafter, the father did everything in his power to act as a parent toward the child. This is certainly not the situation with which we are presented here. We affirm the trial court's decision to terminate Doe's parental rights pursuant to I.C. § 16–2005(b).

### III. CONCLUSION

In review of the testimony presented to the magistrate judge, there is sufficient evidence to support a finding that Doe neglected Jane pursuant to I.C. § 16–2005(b). Therefore, this Court affirms the magistrate judge's order terminating Doe's parental rights. We award costs on appeal to the Respondent.

Chief Justice SCHROEDER concurs.

Justice EISMANN, specially concurring.

I concur in the majority opinion, but I also agree with the dissent that the trial court's findings of fact are woefully inadequate. I also agree that the trial court erred in holding against Doe the fact that the woman he chose to marry would later prove inadequate as a parent. The trial court's conclusory findings, however, are supported by uncontradicted evidence. Had the evidence been disputed, I would vote to vacate the judgment and remand for further findings.

As the majority opinion states, "Doe spent only six weeks with Jane, out of a possible two years where he was free from incarceration and the very act of absconding intentionally cut off all contact with Jane." Prior to his incarceration, Doe had ample opportunity to demonstrate, by his conduct, that he could be a parent to Jane. He did not do so. After he was placed on probation, he chose to abscond and flee to Seattle. During the approximate year he was on the run, he did not provide Jane with anything. His decision to abscond also resulted in his current incarceration.

Once he was incarcerated, Doe decided that he would like to make an effort to have some relationship with Jane. It is simply too little too late. The uncontradicted evidence shows that he neglected Jane and that such neglect justifies terminating his parental rights.

Justice BURDICK, dissenting.

In twenty-five years of experience in Idaho's judiciary, I have never seen a parent's rights terminated on evidence this thin. In his lengthy decision the trial judge had only three sentences in the findings of fact about Doe. If the trial judge had written Justice Trout's opinion with all the inferences from

the trial evidence there would be no dissent. That did not happen.

The Department of Health and Welfare's witnesses furnished no help for the trial judge. They lacked any foundation in the record for their opinion of Doe's abandonment, neglect or fitness as a parent. The Department offered no evidence supporting that Doe neglected Jane; the evidence provided by the Department did not list *as to Jane and Doe* any areas where education, subsistence, medical care or parental control was lacking. Instead, the Department justified its conclusion that termination was in the children's best interest because "[Mother] has been given plenty of opportunity and time to change her behaviors and be a more appropriate parent." Likewise, the only evidence of abandonment presented was the fact Doe was incarcerated, but the father's incarceration alone cannot serve as substantial and competent evidence supporting termination. *See State v. Roe,* 142 Idaho 594, 597, 130 P.3d 1132, 1135 (2006).

The magistrate court in this case stated that "the best" Doe could do to maintain a relationship with Jane during his incarceration was "write letters, send photos and arts and crafts to his child." However, we have explicitly stated that when dealing with incarcerated parents, reality "must play a part on two levels." *Doe v. State,* 137 Idaho 758, 762, 53 P.3d 341, 345 (2002). First, courts must recognize the context in which incarcerated parents attempt to establish or maintain a relationship; incarcerated parents are "severely restricted" in what they can do. *Id.* Second, courts must assess the Department's efforts to assist the parent in establishing or maintaining that relationship. *Id.*

The parent-child relationship does not cease to exist because of incarceration or long absence. When presented with an incarcerated parent, a court should be given evidence upon which it can rule on the best interest of the child as concerns that parent. Courts should consider evidence establishing the quality and extent of time spent with the child prior to incarceration, the nature and circumstances of the offense that led to incarceration, as well as prior charged or uncharged criminal behavior while in the home

that might impact the child's well being. Previous incarcerations or rehabilitations can also be relevant to future ability to properly care for children. Courts must also examine specific evidence establishing the impact incarceration has had on the child's mental, physical or social well-being, and the quality of contacts or efforts made by the incarcerated parent to keep a meaningful relationship with the child while incarcerated. There are a myriad of factual circumstances which come into play in the complicated relationship of parent and child. Not all of them have been listed here, nor do all the possible factors apply in every case. However, a trial judge must be given a context to measure the absence and its impact on the child. *Id.* That simply did not happen here; the Department failed to provide the magistrate court with the kind of detailed evidence necessary to terminate a fundamental right.

Additionally, I am troubled by the trial court's conclusion that "when [Doe] chose [Mother] as the mother of his child he clearly chose someone who could not compensate for him when he was absent in prison." First, there is no evidence of what the circumstances were when these individuals married and no indication that Doe somehow made such a poor choice by marrying Mother that his right to have a relationship with Jane must be terminated. Such a conclusion is simply inappropriate. Second, this conclusion implies that Doe had a choice other than leaving Jane with her other custodial parent when he left for prison. At that time, Mother still had the right to parent her children as she saw fit, and any choice Doe might have made in regard to Jane would at least have needed Mother's consent and at most could have been overridden by Mother. Doe might have chosen to leave Jane with a "surrogate" father in his absence, but Mother still had the right to parent Jane when Doe began his incarceration.

Moreover, once it became clear that Mother could not adequately parent Jane and her other children, the Department ignored the statutory purpose of our act—to strengthen and preserve family life whenever possible. It is unconscionable that the Department failed to notify Doe, pursuant to I.C. § 16–

1606, that it had removed Jane from Mother's custody. Although Doe had some relationship with Jane, he was never provided proper notice of the child protective hearings, the Department never investigated him and failed to have any contact whatsoever with him although aware of his location. The Department only contacted Doe after the termination notice was served. Doe was never afforded a meaningful opportunity to choose someone who could "compensate for him while he was in prison." However, the trial judge found, *based upon no evidence whatsoever*, that the father could have done nothing to change this situation. Therefore, the trial judge's conclusion that Doe had failed in his duty to ensure his daughter was "properly supported, maintained and cared for in [his] absence" is inappropriate and simply not supported by the facts.

The evidence given the trial judge by the Department was abysmally small and even with the stretched findings of fact hidden in the conclusions of law, the trial judge cannot support his decision to terminate Doe's rights to Jane. Rather the trial judge used termination to punish Doe for a situation he knew nothing about, could not have predicted, and was not permitted to attempt to change. So, I ask—is this the way we treat a fundamental right in Idaho?

Justice JONES, concurring in dissent.

I do not claim to be as long in the judicial tooth as Justice Burdick but I agree with the substance of his dissent. Although it may be that Doe is an unsavory person, he has a fundamental liberty interest in maintaining a parental relationship with Jane. That relationship may not be terminated unless the ground for termination is proven by clear and convincing evidence. The trial court's factual findings should be specific to the individual parent whose parental rights are sought to be terminated and demonstrate how pertinent evidence supports them. The trial court is particularly well positioned to perform this task because it can observe the witnesses and evaluate their truthfulness. The trial court serves as the eyes and ears of the appellate system. It should spell out how it arrived at the factual findings. If the findings are deficient, it is difficult to perform the appellate review. That is the situation presented in this case.

The trial court had before it a petition to terminate the parental rights of four individuals with regard to four children. Involved were the mother and three different fathers, including Doe. The trial court's memorandum opinion was a total of seven pages with 2½ pages of factual findings for all four parents. Findings specifically related to Doe and his relationship with Jane consisted of seven sentences. They are as follows:

7.     When the family resided with [Doe], [Jane's older half-sister] felt that she was treated better, but that there was a lot of violence in the home. There had been a particularly nasty incident that had taken place at the time of the birth of [Jane] because of [Doe's] belief that he may not have been her father. Testimony was that [Doe] was regularly intoxicated....

11.     During the child protection case the Department did nothing to give notice to [Doe]. The department did not communicate with him, involve him in any planning, or investigate the possible family placements with his family. [Doe] is and has been unavailable because of incarceration. He wrote his children and sent them his prison made arts and crafts. Photographs were sent to [Doe] of his children.

The trial judge made a generic finding (finding 13) that all four of the parents had failed all four of the children. Since the above findings would not on their own support termination on the basis of neglect, this finding appears to be the one that underpins the termination order. According to the court, when the family was together no combination of parents or parent was capable of (a) providing a stable home environment for the children, (b) providing support for the children, (c) complying with the law and requirements of society, or (d) educating the children and teaching them to be productive law abiding citizens. This finding would have been much more helpful if it had been specific to each parent. Doe was responsible for only one of the children, Jane, and it would have been appropriate to make a finding

specifically addressed to the relationship between those two.

As Justice Burdick observes, the Department was not particularly helpful in providing evidence bearing specifically on Doe's relationship with Jane. Faced with little pertinent evidence relative to Doe, and with four parental defendants to act upon, the trial court tended to flock shoot them in finding 13. On appeal, the district court winnowed through the evidence and was able to put together a much better case, as has the majority here. However, a case should not be made on appeal. Rather, it should be made at the trial court level, which did not occur here. Where a fundamental right is involved, we should expect more specifically tailored findings. The Court should reverse the order terminating Doe's parental rights and remand the case for further proceedings.