# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 38100

| | |
|---|---|
| IN THE MATTER OF JOHN DOE AND JOHN DOE I, CHILDREN UNDER EIGHTEEN YEARS OF AGE<br><br>_____<br><br>IDAHO DEPARTMENT OF HEALTH & WELFARE,<br><br>      Petitioner-Respondent,<br><br>v.<br><br>JANE (2010-26) DOE,<br><br>      Respondent-Appellant,<br><br>and<br><br>JOHN DOE II, and ERIN SMITH, Guardian Ad Litem,<br><br>      Respondents. | 2011 Unpublished Opinion No. 360<br><br>Filed: February 14, 2011<br><br>Stephen W. Kenyon, Clerk<br><br>**THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY** |

Appeal from the Magistrate Division of the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Carolyn M. Minder, Magistrate.

Judgment of the magistrate terminating parental rights, <u>affirmed</u>.

Alan E. Trimming, Ada County Public Defender; Adam C. Kimball, Deputy Public Defender, Boise for appellant.

Hon. Lawrence G. Wasden, Attorney General; Deena A. Layne, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Chief Judge

Jane Doe appeals from the magistrate's decision terminating her parental rights as to two of her children, K.L. and J.O. Specifically, Doe contends the magistrate erred in finding she neglected her children as defined in Idaho Code § 16-2002(3)(a) and (b). We affirm.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Doe is the mother of K.L., born in 2003, and J.O., born in 2005.[1]  This case originated from a 2009 referral to the Idaho Department of Health and Welfare (Department), which was the ninth referral concerning Doe and her children.  From a 2003 referral, K.L. was declared in imminent danger and removed from Doe's custody three months after his birth.  His father was convicted of child abuse and sent to prison.  K.L. was returned to Doe following the shelter care hearing.  From an August 27, 2008 referral, K.L. and J.O. were declared in imminent danger because of bruising on J.O.'s head and face.  The children were returned to Doe after two months in the Department's custody.  On May 27, 2009, Doe checked herself into Intermountain Hospital due to self-reported suicidal and homicidal thoughts.  Consequently, the Department received a referral beginning this case, declared K.L. and J.O. to be in imminent danger, and placed them in foster care.  On May 29, 2009, the Department filed a petition for hearing under the child protective act, asserting that Doe had neglected her children due to her hospitalization and her inability to obtain stable housing.  Doe waived her adjudicatory hearing and stipulated that by admitting herself to Intermountain Hospital she was unable to provide care for her children.

On July 24, 2009, the court, after hearing, approved a case plan.  The children remained in foster care over the life of the case plan.  On May 12, 2010, a permanency hearing was held and the court adopted a plan of termination of parental rights as to Doe.  On July 7, 2010, the Department filed a petition for termination of parent-child relationship alleging neglect as the basis for termination.  A two-day trial was held in September 2010 and on September 20, 2010, the magistrate issued its order and final judgment granting the petition to terminate Doe's parental right as to K.L. and J.O.  Doe appeals.

---

[1]     This case only concerns Doe's parental rights to K.L. and J.O.  Neither K.L. nor J.O.'s fathers appealed the decision below that terminated their rights.  Doe also has a daughter that is not part of this case who is being cared for by her biological father, Doe's husband.  In 2009, Doe placed another infant child for adoption.

## II.

## DISCUSSION

Doe contends that the magistrate's decision is not supported by the evidence. In an action to terminate parental rights, due process requires this Court to determine if the magistrate's decision was supported by substantial and competent evidence. *In re Doe*, 143 Idaho 343, 345, 144 P.3d 597, 599 (2006). Substantial and competent evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. at 345-46, 144 P.3d at 599-600. This Court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Doe v. Doe*, 148 Idaho 243, 246, 220 P.3d 1062, 1064 (2009). We conduct an independent review of the record that was before the magistrate. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002); *see also Quilloin v. Walcott*, 434 U.S. 246, 255 (1978). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). "Implicit in [the Termination of Parent and Child Relationship Act] is the philosophy that wherever possible family life should be strengthened and preserved . . . ." I.C. § 16-2001(2). Therefore, the requisites of due process must be met when the Department intervenes to terminate the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the Department prove grounds for terminating a parent-child relationship by clear and convincing evidence. *Id*. Idaho Code § 16-2005 permits the Department to petition the court for termination of the parent-child relationship when it is in the child's best interest and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period which will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

**A.     Neglect**

The magistrate terminated Doe's parental rights on the ground of neglect, I.C. § 16-2005(1)(b).  Idaho Code § 16-2002(3) defines "neglect" as any conduct included in I.C. § 16-1602(25), as well as situations where the "parent(s) has failed to comply with the court's orders in a child protective act case or the case plan, and reunification of the child with his or her parent(s) has not occurred within the time standards set forth in section 16-1629(9)."  I.C. § 16-2002(3)(b).  The time standard established by I.C. § 16-1629(9) is defined as when "a child is placed in the custody of the department and was also placed in out of the home care for a period not less than fifteen (15) out of the last twenty-two (22) months from the date the child entered shelter care."  The magistrate found that pursuant to I.C. § 16-2002(3)(a) Doe had neglected her children within the meaning of I.C. § 16-1602(25).  The magistrate also found that Doe had neglected her children under I.C. § 16-2002(3)(b) because she had failed to comply with the case plan and reunification had not occurred within the time limit imposed by I.C. § 16-1629(9).  Each will be addressed in turn.

**1.     Parental care and parental responsibilities**

The magistrate found that Doe neglected her sons under the general definition of neglect.  Idaho Code § 16-1602(25) provides that "neglected" means a child:

> (a) Who is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents, guardian or other custodian or their neglect or refusal to provide them; however, no child whose parent or guardian chooses for such child treatment by prayers through spiritual means alone in lieu of medical treatment shall be deemed for that reason alone to be neglected or lack parental care necessary for his health and well-being, but this subsection shall not prevent the court from acting pursuant to section 16-1627, Idaho Code; or
> (b) Whose parents, guardian or other custodian are unable to discharge their responsibilities to and for the child and, as a result of such inability, the child lacks the parental care necessary for his health, safety or well-being; or
> (c) Who has been placed for care or adoption in violation of law; or
> (d) Who is without proper education because of the failure to comply with section 33-202, Idaho Code.

The magistrate found that the State demonstrated, with clear and convincing evidence, that Doe had neglected K.L. and J.O., under I.C. § 16-1602(25)(a), because of her instability in housing and employment and her failure to consistently treat her mental health needs.  The magistrate also found that Doe neglected K.L. and J.O., under I.C. § 16-1602(25)(b), because she was

4

unable to discharge her parental responsibilities and the inability will continue for a prolonged period.

In regard to housing and employment the magistrate stated:

In May 2009, and for at least six years preceding this third child protection case, [Doe] has not had a safe, stable and healthy home environment nor any income to provide for herself and her children. [Doe] has not, in the last 15 months, actively sought or maintained legitimate employment. In the last seven years there is no work history. There has been no documentation of income and the fact that SSI in the amount of $722.00 per month may become available in October 2010 is not sufficient to meet the needs of [Doe] and her children. [Doe] testified that she hopes to buy a car, pay for insurance and get a drivers license to be able to get these children to their many appointments. [Doe] testified that she owes the State $209.00 per month since May 2009 for [K.L.]'s care and $179.00 per month since May 2009 for [J.O.]'s care. She admitted that between insurance and arrearages she will have very little money to spend on food, shelter, clothing and necessities for herself.

Doe's history of failing to secure stable housing casts considerable doubt on her future ability to maintain stable housing. Doe's past circumstances and conduct may be considered when evaluating whether any current improvements would be long lasting. *In re Doe 2009-19*, __ Idaho __, __ P.3d __ (November 24, 2010). Doe, age twenty-five, has had unstable housing since she left her parent's home at age fourteen. In February 2009, she was aided by a local church in obtaining housing; however, she lost the house when she could not pay the rent. She then moved into her father's home, which further put her children at risk because Doe had been sexually abused by her father. After only three days in his home she left, filed a police report, and took her sons to FACES for an examination because of a concern her father was inappropriately touching K.L. In addition, over the course of the case plan she continued to move frequently, and for a period of time was living in a car. While Doe had stable housing for the four months leading up to the termination hearing, Doe testified she intended to move on to another, not yet secured, housing arrangement in December 2010. An additional concern regarding Doe's ability to maintain stable housing is her ability to secure employment. Doe did not graduate from high school. She began working toward earning her GED with the assistance of a family support specialist, but at the time of the trial she had still not completed it. Doe's lack of employment experience or education reflects negatively on her prospects for future employment.

5

The Department placed K.L. and J.O. in foster care because Doe checked herself into a hospital for possible suicidal and homicidal thoughts. Doe has had a difficult life as a victim of physical and sexual abuse. The social workers that have spent time with Doe recognized that it will take her a lot of work to progress past these difficulties so that she can successfully parent, and Doe acknowledged she needs to keep working on her mental health. Doe did not diligently follow through with the mental health assistance provided by the Department over the course of the case plan. Doe failed to attend counseling meetings for over six months. When Doe's six sessions that had been scheduled through the Department ended, the clinician testified that Doe needed more counseling sessions. While Doe testified she was receiving weekly counseling from Lutheran Community Services, she had only been receiving this counseling for a few months leading up to the termination hearing. The individual that performed the risk to child assessment of Doe testified that based on the risk factors she saw in Doe's life, Doe would require at least weekly counseling sessions for a minimum of a year to deal with the issues in her life. Doe's recent counseling was not sufficient to demonstrate progress in improving her mental health.

The record does not demonstrate that Doe's parenting skills have improved over the course of the case plan or that she has learned to better care for her children's needs. J.O. entered foster care with impaired hearing that required surgery. J.O.'s hearing problem caused him to develop a speech impediment, making him so difficult to understand that K.L. interpreted for J.O. Doe's failure to recognize J.O.'s medical needs for his hearing loss and J.O.'s needs for speech therapy demonstrated a lack of parenting skills. Moreover, J.O. entered foster care at the age of four and was still not potty trained. Both of Doe's children had significant cavities and neither were current on their immunizations. The children also had behavioral problems that the children's psychologist identified as the children writing their own rules. The psychologist believed it was a coping mechanism caused by Doe's lack of nurturing and failure to provide a well-supervised setting. Doe's interaction with the children during visits failed to demonstrate learned parenting skills. Doe was resistant to parenting coaching until shortly before trial.

The magistrate recognized that Doe had a seven-year history with the Department. K.L. was first declared in imminent danger as an infant and had been removed from Doe's care three times. J.O. had been removed twice. K.L. and J.O. have been the subject of nine referrals to the Department concerning abuse by father figures and Doe. The magistrate's findings that Doe had

neglected K.L. and J.O under I.C. § 1602(25)(a) and (b) is supported by substantial and competent evidence.

## 2. Case plan

The magistrate found clear and convincing evidence that Doe had failed to comply with the case plan. In doing so, however, the magistrate appropriately recognized that Doe had made some personal gains in the last few months before the termination hearing, but found it was too little too late. It is undisputed that the children had been in foster care for fifteen months and reunification with Doe had not taken place. The case plan was designed to address Doe's mental health and her ability to provide a safe, stable, nurturing, and healthy home. The case plan identified several requirements for Doe to complete, including: (1) mental health evaluation and follow-up; (2) obtain and maintain safe, stable housing; (3) actively seek and obtain employment or other sources of income; (4) participate in addressing the children's needs; (5) attend and demonstrate skills learned from parenting classes; and (6) complete a risk to child assessment.

The first task required Doe to successfully complete and follow any recommendations from a psychological evaluation that would verify the impact of mental illness on Doe's daily life and her ability to provide appropriate care and supervision of her children. The magistrate held "[Doe] did not and has not followed through with the recommendations of the psychological evaluation. [Doe]'s history of mental health issues which impact her ability to effectively and appropriately care for her children, has not been addressed adequately and consistently." Doe argues she substantially complied with the case plan because she completed the evaluation, attended counseling sessions, and received medication management. She also argues that she completed all of the approved counseling sessions through About Balance and is positioned to maintain other counseling sessions.

The magistrate's finding is supported by substantial and competent evidence. Doe first met with a clinician with About Balance Mental Health, twice in August 2009 to complete the psychological evaluation. The evaluation assessed that Doe suffers from severe mental illness that impacts her daily functioning and ability to cope with life stressors and recommended psycho-social rehabilitation services to deal with symptoms in order to cope with life stressors. The evaluation also recommended that Doe utilize counseling and pharmacological services available from the Department and obtain Medicaid. While Doe attended one meeting in September for therapy, Doe failed to attend her next counseling session and did not meet with

7

the clinician again until seven months later. It was not until Doe re-engaged in April 2010, just prior to the permanency plan hearing, that she began her treatment plan, there was no explanation for the delay. It was over ten months after her children had been placed in foster care before the clinician felt that Doe began to take her treatment more seriously. Doe testified she was, at the time of the hearing, attending weekly counseling sessions with Lutheran Community Services. While Smith acknowledged that Doe could satisfy the recommendation from the mental health evaluation if she maintained pharmacological treatment and continued long-term counseling from another provider, Doe's failure to timely follow through with her counseling from About Balance demonstrates that this was unlikely.

Doe was required to attend medication management meetings through About Balance to receive medication for her mental health. Doe attended her meetings in September and October 2009, but she did not attend another meeting until May 26, 2010, and by that time she had been without her medication for about one month. Despite Doe testifying she was on the wait-list for Terry Reilly Mental Health Services, which would enable her to continue pharmacological treatment, at the time of the termination hearing Doe had still not completed her Medicaid application, as was required.

Doe's second task in the case plan was to obtain and maintain a safe, stable, and healthy home environment for herself, K.L, and J.O, which also required complying with random home visits and not allowing other individuals to reside in the home without Department approval. The magistrate found that Doe "demonstrated no ability to *independently* and *consistently* provide food and shelter for herself and whatever her family unit might need at any given time." (Emphasis original.) When the children were placed in foster care, Doe was in Intermountain Hospital. Doe then moved to City Lights Shelter until she had problems with other residents and moved to the Salvation Army Booth Memorial House. She stayed at Booth Memorial House for three months, but in February 2010 moved in with friends. Doe did not provide the Department with the names of her roommates, as the case plan required. In March, Doe and her roommates were required to leave the place they were staying; this led to Doe living in a car. In April 2010 the Booth Memorial House for single mothers gave her a bed. Doe secured transitional housing at the Booth Memorial House in June 2010, which provided her with a highly-structured environment. The Department's case manager acknowledged that the transitional housing provided by the Booth Memorial House was an approved home for reunification. Doe argued

her stay at the Booth Memorial House for the last four months of the case plan demonstrated she could maintain a safe, stable home environment. While Doe testified she could possibly stay at the Booth Memorial House until June 2012, she also testified she intended to leave for a low-income housing apartment in December 2010, although that housing had not been secured. Doe's extremely poor history in housing casts doubt over her ability to actually secure low-income housing. Substantial and competent evidence supports the magistrate's finding that Doe failed to maintain stable housing.

Doe was to actively seek and maintain legitimate employment and/or a legitimate source of income sufficient to provide for herself and her children. The magistrate found:

> From May to November, [Doe] had no employment. [Doe] reported having a job in November 2009 but there was never verification of the same. [Doe] had a part-time job for a period in late January to February, but lost that job due to an inability to transport herself when she had to leave her "friend's" residence. Since March she has not been employed. She says she has filled out applications but [t]here has been no verification of the same. [Doe]'s very limited educational skill set impacts what work might be available to her.

Doe contends that her act of getting two jobs, applying for seventy-two jobs over the course of the case plan, and securing SSI income satisfies the case plan. Doe was unable to maintain the employment she obtained, a critical requirement of the case plan. As noted above, Doe's lack of education and work experience and failure to complete her GED limit her employment opportunities. The magistrate also found "[t]he income she will begin to receive in October [from SSI] is inadequate to support herself and is distinctly inadequate to consistently provide for herself and these boys." The magistrate's findings are supported by substantial and competent evidence.

Doe was required to participate in addressing her children's needs, including attending medical appointments and following the doctor's recommendations. The magistrate found that Doe did not actively participate in addressing her children's needs. During preschool screening, while in foster care, it was discovered that J.O. had a hearing impairment, which caused a speech impediment. The Department provided Doe with a letter outlining appointments for hearing evaluations and meetings for speech therapy. Doe did not attend those meetings as the case plan required. J.O. was scheduled for surgery. On the day of J.O.'s surgery, Doe arrived late and she left the hospital before the surgery was complete. Doe contends the reason she was late was

9

because she forgot the location of the surgery, not about the surgery itself, and claims she was unaware she could stay longer than an hour, despite testimony indicating that she was encouraged to stay throughout the surgery. There was also no evidence that Doe attended either of the children's multiple dentist appointments. Doe did meet with the children's psychologist, but only twice. While Doe attended some of her children's appointments, she did not attend them in a sufficient manner to enable her to understand her children's needs and to aid in satisfying those needs. The magistrate's finding is supported by substantial and competent evidence.

Doe was required to attend Department-approved parenting education classes and receive parenting instruction. She was also required to demonstrate and apply the developed skills in caring for her children. The magistrate found Doe did not demonstrate her ability to follow recommendations in caring for her children. Doe argues she completed the parenting program and demonstrated the skills she learned in parenting her children. While Doe completed the homemaking services discipline module though AmeriPsych from the Department's referral, the instructor testified that Doe did not demonstrate the techniques taught in the module. The case manager observed in the visits which included Doe's husband, that Doe was more flirtatious with her husband than she was attentive of K.L. and J.O. Doe received general parenting instruction from the Department's case manager during supervised visits. The case manager acknowledged that Doe was open and receptive to parenting coaching and attempted to implement the feedback, but only after refusing the coaching for many months. Towards the end of the case plan, the case manager acknowledged that Doe was making progress in interacting with K.L. and J.O. This progress, however, was not sufficient to demonstrate she had successfully learned and applied the parenting skills taught in her parenting class. Substantial and competent evidence supports the magistrate's determination.

Doe was to complete a risk to child assessment from a Department-approved social worker and follow all recommendations. The risk assessment was completed on August 7, 2009, and found Doe to be a moderate risk to her children. Based on the assessment, it was recommended that Doe obtain individual, weekly counseling sessions for at least a year, assuming progress occurred quickly. The assessment recommended long-term individual counseling and medication management to deal with past emotional, physical, and sexual abuse and to deal with the grief from releasing her fourth child for adoption. The assessment also

recommended that she and her husband attend couples therapy to resolve interpersonal issues. The assessment recommended that K.L. and J.O. receive individual counseling. Finally, the assessment recommended that a definitive after-care plan should be implemented before the children return to Doe's home to prevent further harm. The magistrate found Doe failed to follow the recommendations of the risk to child assessment. Doe argues she completed the risk to child evaluation and had been attending counseling.

As noted above, Doe significantly delayed working on managing her mental health issues. The assessment recommended she attend weekly sessions, but Doe did not actively begin counseling until April 2010. While Doe argues that she attended couples counseling with her husband, she and her husband were not attending marriage counseling at the time of the termination hearing, even though she recognized they had significant work to do on their relationship. Doe has not carried these steps out with the diligence necessary to mitigate the risks to her children. Further, K.L. and J.O. are receiving counseling through the Department, and Doe did not develop a plan for her children to maintain counseling. The magistrate's finding is supported by substantial and competent evidence.

This Court concludes there is substantial evidence supporting the magistrate's finding that Doe did not comply with the case plan. Because of her poor history, Doe had significant need for improvement over the course of the case plan. While Doe made progress with some areas of the case plan, the plan was approved in July 2009, and Doe did not seriously begin addressing the plan until April 2010, when she obtained housing at the Booth Memorial House and began counseling. Doe did not make sufficient progress during this short period of time to demonstrate she could care for her children.

## B.      Best Interest

In concluding that termination was in the best interests of the children, the magistrate considered the conflicting policies of the parent's fundamental liberty interest in maintaining a relationship with her children versus the need to provide permanency in a child's life. The decision also included an extensive consideration of the record. The children entered foster care in a state of medical neglect and at the beginning of their care both children behaved inappropriately, which included tantrums, cursing, and aggressive behavior. They have both made vast improvements. K.L. is doing well in school, and J.O.'s behavior has improved at day care. The social workers and guardian ad litem generally expressed their opinions that it was in

11

the children's best interest to terminate Doe's parental rights. Doe has not challenged the magistrate's determination as to best interest on appeal, and while we need not address it, we have reviewed the record and conclude that there is substantial and competent evidence supporting that determination.

**III.**

**CONCLUSION**

Substantial and competent evidence supports the magistrate's decision to terminate Doe's parental rights. The magistrate's judgment terminating Doe's parental rights to K.L. and J.O. is, therefore, affirmed. No costs or attorney fees are awarded on appeal.

Judge LANSING and Judge MELANSON **CONCUR.**