## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 42140

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENTAL RIGHTS OF JOHN (2014-11) DOE | 2014 Unpublished Opinion No. 692 |

IN THE MATTER OF THE
TERMINATION OF THE PARENTAL )
RIGHTS OF JOHN (2014-11) DOE )
----------------------------------------------------------- )
IDAHO DEPARTMENT OF HEALTH & )
WELFARE, )
)
  Petitioner-Respondent, )
)
and )
)
GUARDIAN AD LITEM, )
)
  Respondent, )
v. )
)
JOHN (2014-11) DOE, )
)
  Respondent-Appellant. )
)

2014 Unpublished Opinion No. 692

Filed: August 25, 2014

Stephen W. Kenyon, Clerk

**THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY**

Appeal from the Magistrate Division of the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Thomas Kershaw, Magistrate.

Order terminating parental rights, affirmed.

Williams Law Office, Chtd., Timothy J. Williams, Twin Falls, for appellant.

Jamie A. Lamure, Kimberly, for respondent guardian ad litem.

Hon. Lawrence G. Wasden, Attorney General; James T. Baird, Deputy Attorney General, Twin Falls, for respondent.

_____

GRATTON, Judge

John Doe (Father) appeals from the magistrate's order terminating his parental rights. We affirm.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2011, the Idaho Department of Health & Welfare (the Department) filed a petition alleging that Father and Jane Doe (Mother) exposed their eight-month-old child, M.F., to methamphetamine. A lengthy child protection action followed. In 2013, the termination hearing was held in which the magistrate found that Father had neglected M.F. The magistrate found that the parents had failed to complete the parenting plan. Father's plan included requirements to obtain treatment for substance abuse, mental health treatment, and random drug testing. The caseworkers had difficulty throughout the proceedings locating Father, and Father made little effort to contact the caseworkers or the guardian ad litem. Once visitation was established, Father attended six out of eighteen scheduled visits with M.F. and his visitation plan was canceled due to lack of participation. Father did not attempt to re-establish visitation. The magistrate specifically found that Father never meaningfully participated in the case plan. The magistrate also found that both parents exposed M.F. to methamphetamine. Before the hearing to terminate Father's parental rights, Father was arrested for aggravated assault for pointing a gun at an individual. He was released on bond, but was again arrested for possession of methamphetamine. That charge was dismissed in exchange for his guilty plea on the aggravated assault charge, for which he continued to be incarcerated at the time of trial. Despite a finding of neglect, the court denied the petition to terminate Father and Mother's parental rights due to Mother's efforts to rehabilitate.

In May 2013, the Department filed another petition to terminate Mother and Father's parental rights because Mother was believed to be drinking again, she was in violation of her probation, and was "on the run." Mother failed to participate in the proceedings and her parental rights were terminated by default in August 2013. Father objected to termination and a hearing was held in February 2014. Based on the evidence presented at the first hearing, in addition to the evidence presented at the February 2014 hearing, the court made the following findings. Over the course of the parental proceedings, Father was generally uncooperative with the Department and never made significant progress on any case plan. Once incarcerated, Father refused to sign a release that would allow the Department to get information about his performance in the prison system. He also refused to provide proof to the Department of the courses he completed and he had not completed a drug treatment program. Father had been

approved for parole on the condition that he would complete the prison system's therapeutic community program; however, he was discharged from the program roughly halfway through. He testified that he had again enrolled in the program and would be eligible for parole in December 2014. Father admitted into evidence several certificates at the hearing showing he completed classes in anger management, parenting, and on being a role model.

Father has never been the primary caregiver of M.F., or supported her financially. His child support arrearage is over $6,000. Father has sent birthday and Christmas gifts to M.F. while he has been incarcerated, written cards and at least one letter, and recorded a story and sent it to M.F. Father has had limited contact with M.F. since his incarceration in June 2012. Father and M.F. have had telephone calls, but M.F. does not enjoy the calls and prefers to do other things. Father's failure to make more calls is likely due to his lack of funds requiring him to make collect calls, which are refused.

M.F. has been in foster care since September 2011. Her current foster parents are her great uncle and aunt, who live in California. They have had M.F. since September 2012. M.F. refers to them as her mommy and daddy. When they received M.F., she was quiet and she had some dental problems. Since that time, the dental problems have been fixed and the child is now described as high energy. M.F. has cousins and other relatives in the area where she lives. She has bonded with her foster family and her foster parents want to adopt her. It is undisputed that M.F. is in a good and stable home. The guardian ad litem and the caseworker testified that it would be in M.F.'s best interest to be adopted by her current foster parents. Both emphasized that M.F. needs stability and is unlikely to receive it from Father.

Father testified that he hopes to be in a position to provide full-time care for M.F. once he is released from prison. He has no specific plan how he will accomplish that goal once released. His mother testified that he could live with her once he is released and that he could work at a dairy farm where her husband works. The earliest he could be released is December 2014 at that point M.F. would be nearly four years old. If termination was denied, M.F. would be required to move back to Idaho where she would be introduced to a new foster home, and a new parenting plan would also be required. Even given this best-case scenario, the court found it was not in M.F.'s best interest. The magistrate found that Father neglected M.F. and that it would be in her best interest to terminate Father's parental rights. Accordingly, the court granted the petition to terminate Father's parental rights. Father timely appeals.

3

## II.

## ANALYSIS

In an action to terminate parental rights, due process requires this Court to determine if the magistrate's decision was supported by substantial and competent evidence. *In re Doe*, 143 Idaho 343, 345, 144 P.3d 597, 599 (2006). Substantial and competent evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* at 345-46, 144 P.3d at 599-600. This Court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Doe v. Doe*, 148 Idaho 243, 246-47, 220 P.3d 1062, 1064-65 (2009). We conduct an independent review of the record that was before the magistrate. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002); *see also Quilloin v. Walcott*, 434 U.S. 246, 255 (1978). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). "Implicit in [the Termination of Parent and Child Relationship Act] is the philosophy that wherever possible family life should be strengthened and preserved . . . ." I.C. § 16-2001(2). Therefore, the requisites of due process must be met when the Department intervenes to terminate the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the Department prove grounds for terminating a parent-child relationship by clear and convincing evidence. *Id.* Idaho Code § 16-2005 permits the Department to petition the court for termination of the parent-child relationship when it is in the child's best interest and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period which will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

Idaho Code § 16-2002(3) defines "neglect" as any conduct included in I.C. § 16-1602(26), as well as situations where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not

4

been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. Section 16-1602(26)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them.

Father does not challenge the magistrate's findings of fact, but simply notes that M.F.'s placement in foster care, his addiction to controlled a substance, and incarceration are not individually enough for termination of his parental rights. He argues that he continues to address his addiction problem through AA, relapse prevention classes, and the therapeutic community program. As to contacting the child while incarcerated, he analogizes his situation to that of the father in *Doe v. State*, 137 Idaho 758, 761-62, 53 P.3d 341, 344-45 (2002). In that case, the Idaho Supreme Court vacated a termination order where the father had been incarcerated since the child's birth, had sent letters and gifts to the child while incarcerated, had expressed an interest in maintaining a relationship with the child, and could have had an early release from prison but failed the rider program he was on. The Court reversed the magistrate, reasoning:

> There is an issue, however, of what actions Doe could have taken, once in prison, to maintain contact with his child. Doe sent his child gifts and made efforts to contact the child through the Department and through the child's maternal grandmother, but he was unsuccessful. One must ask what more could Doe have done? The Department's argument is that he could have completed the "rider" program successfully and gotten out of prison early. The magistrate accepted this as evidence of abandonment. That is not the type of substantial competent evidence that supports a finding by clear and convincing standard of abandonment. The Department trivializes Doe's efforts to have a relationship with his son. Reality must play a part at two levels: 1) Doe was severely restricted in what he could do. Within that context he tried to establish a relationship. 2) The Department did little or nothing to assist in that effort. The Department focused on the best interest of the child--laudable in the abstract but without regard for the parental rights possessed by Doe.

*Doe*, 137 Idaho at 761-62, 53 P.3d at 344-45. Father argues he has done everything under the circumstances to maintain contact with the child while incarcerated. He has made calls to M.F., has sent birthday and Christmas gifts, written cards and at least one letter, and recorded and sent a story to M.F. However, as both the Department and the appointed guardian ad litem note, before Father was incarcerated he exposed M.F. to methamphetamine, failed to complete the

5

required parental plan, and became incarcerated for his conduct during the proceedings. The Idaho Supreme Court made this same distinction in a later case:

> On appeal, Doe also argues this case is controlled by our decision in *Doe v. State*, 137 Idaho 758, 53 P.3d 341 (2002), in which this Court reversed the trial court's decision to terminate the parental rights of an imprisoned father. Unlike in *Doe*, there is sufficient evidence here of this father's neglect of Jane prior to the time he was imprisoned, so that it is not necessary to evaluate his conduct while imprisoned.

*In re Doe*, 143 Idaho 343, 348, 144 P.3d 597, 602 (2006). Additionally, once incarcerated Father continued to be uncooperative in pursuing his parenting plan. He refused to sign a release to allow the Department to review his progress while in prison and he was discharged from the therapeutic community program for noncompliance and nonparticipation in the program. There is substantial and competent evidence to support the court's findings that Father neglected M.F.

There is also substantial and competent evidence to support the magistrate's finding that it is in the best interest of M.F. to terminate Father's parental rights. Though Father testified to plans that he may be able to obtain release and may be able to find employment, Father also showed a continued pattern of failing to cooperate with the Department in reunification and failure to meaningfully comply with his parental plan. Father belatedly made some minimal effort to establish a relationship with M.F., but the magistrate balanced this against M.F.'s stability in her current home in California. M.F. has been in foster care since 2011, and placed with her current foster parents since 2012. She has flourished while in their care, and they intend to adopt M.F. if Father's parental rights are terminated. The caseworker and guardian ad litem both testified that it is in M.F.'s best interest to have permanent placement and to terminate Father's parental rights. There is substantial and competent evidence that terminating Father's parental rights is in the best interest of M.F.

## III.

## CONCLUSION

The magistrate's determination is supported by clear and convincing evidence that Father neglected M.F., and that it is in the child's best interest to terminate Father's parental rights. Therefore, the order terminating Father's parental rights is affirmed.

Chief Judge GUTIERREZ and Judge LANSING **CONCUR.**

6