**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 47556**

| | |
|---|---|
| In the Matter of: John Doe I, John Doe II, and John Doe III, Children Under Eighteen (18) Years of Age. ) ) ) ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, ) ) ) | Filed: February 10, 2020 |
| Petitioner-Respondent, ) ) | Karel A. Lehrman, Clerk |
| v. ) ) ) | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY |
| JANE DOE (2019-40), ) ) ) | |
| Respondent-Appellant. ) ) | |

Appeal from the Magistrate Division of the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Courtnie R. Tucker, Magistrate.

Judgment terminating parental rights, affirmed.

Aaron Bazzoli, Canyon County Public Defender; Alex W. Brockman, Deputy Public Defender, Caldwell, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Teri A. Whilden, Deputy Attorney General, Boise, for respondent.

_____

LORELLO, Judge

Jane Doe (2019-40) appeals from the judgment terminating her parental rights. Doe argues that the magistrate court erred in concluding that termination of her parental rights is in the best interests of the children. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Doe is the mother of the three minor children in this action. Police removed the two older children, John Doe I and John Doe II, from Doe's care after substantiating a report that

1

Doe had bruised the eldest child's upper lip while covering his mouth to stifle his crying. The two children were then placed in the protective custody of the Idaho Department of Health and Welfare. Case plans were developed for Doe and the children's fathers.[1] While the child protection case was pending, John Doe III was born. Because Doe had made little progress on her case plan, Doe III was also taken into the Department's protective custody.

The State eventually filed a petition to terminate the parental rights of Doe and the children's fathers. Neither father contested the termination of his parental rights. Following trial, the magistrate court terminated Doe's parental rights after finding clear and convincing evidence that she had neglected the children and that termination is in their best interests.[2] Doe appeals.

## II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). In a termination proceeding, due process and the substantial evidence test requires the trial court's findings be supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006); *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600. The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order terminating parental rights. *Doe*, 148 Idaho at 245-46, 220 P.3d at 1064-65.

---

[1]     Although Doe is married, she is not married to the biological and legal father of John Doe I. Doe's husband is, however, the presumptive legal father of John Doe II and John Doe III. However, the biological father of these children remains unknown.

[2]     The magistrate court also terminated the parental rights of the two fathers involved in this case. The decision to terminate their parental rights is not at issue in this appeal.

## III.

## ANALYSIS

Doe argues the magistrate court erred in concluding that termination is in the children's best interests. Specifically, Doe asserts that the magistrate court failed to give proper consideration to the children's lack of permanent placement at the time of trial and Doe's potential to reunify with the children if given adequate mental health services. The State responds that the magistrate court's decision to terminate was correct and had proper evidentiary support. We affirm the magistrate court's decision.

As alluded to above, Doe does not challenge the magistrate court's conclusion that the State established a statutory ground for termination or that the children were in the Department's custody for fifteen of the past twenty-two months. Thus, our only task is to review the magistrate court's conclusion that termination is in the children's best interests.

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

The magistrate court concluded that terminating Doe's parental rights is in the children's best interests due to her complete disengagement from parenting, unwillingness to access available services to improve her situation, and the risk that she may physically abuse the children. In support of this conclusion, the magistrate court found that Doe had injured the eldest child while attempting to stifle his crying. The magistrate court further found that Doe took no steps to improve her parenting skills, made no progress on her case plan during the course of the protection case, and failed to demonstrate she had obtained stable housing or income. Despite

3

repeated offers of visitation, Doe visited the children only once. Consequently, the magistrate court found that there remained a risk that Doe would abuse the children again if placed back in her care. Additionally, the children needed therapy services when they came into the Department's custody. The two older children suffered speech delays and aggression issues while the younger child required physical therapy to address an issue with his neck. Despite Doe's lack of participation in their therapy, the magistrate court found that the children showed significant improvement while in foster care.

Doe does not challenge the above-described findings. Rather, Doe first argues that the magistrate court failed to consider that leaving the children in her custody was the surest and quickest route to provide the children with permanency and stability. Although the children had yet to receive a permanent adoptive placement at the time of the termination trial, they were in a pre-adoptive placement and were wellbonded with those foster parents. It is possible that these potential parents will decline to adopt the children; however, that does not mean the children's permanency and stability would be better served by leaving the children in Doe's custody. The magistrate court's findings related to Doe's disengagement with the children, lack of progress on her case plan, and failure to demonstrate either a stable income or housing undermine the assertion that Doe was a viable avenue to provide permanency and stability to the children.

Doe's alternative argument--that the magistrate court failed to take adequate consideration of her potential to reunify with the children if given in-home mental health treatment--is also unavailing. The magistrate court found that Doe demonstrated an inexplicable unwillingness to engage the outside world during the child protection case. After the children were taken into the Department's custody, Doe expressed fears and anxiety about leaving her home and riding in cars. Doe's case worker responded by referring Doe for an initial mental health evaluation in her home. Despite Doe's inability to identify any specific symptoms of mental illness, the evaluator found that Doe suffered from mild depression. Although the Department offered Doe additional mental health services, she failed to follow up on the offer.

Doe asserts that "it seems reasonable" that she could complete a case plan that provided her in-home mental health services. However, the record does not contain evidence supporting this assertion. Doe submitted no medical evidence showing she suffered fears of leaving her home due to a mental illness or how in-home treatment would have affected her ability to parent.

4

Doe had the right to submit evidence showing how support services would have assisted her in parenting. *See Idaho Dep't of Health & Welfare v. Doe*, 151 Idaho 498, 509, 260 P.3d 1169, 1180 (2011). However, Doe failed to present such evidence and does not allege that she was prevented from doing so. Consequently, we hold that Doe has failed to show error in the magistrate court's decision to terminate her parental rights.

## IV.

## CONCLUSION

There was clear and convincing evidence supporting the magistrate court's conclusion that terminating Doe's parental rights is in the children's best interests. Doe has failed to show error in the magistrate court's conclusion. Accordingly, the magistrate court's judgment terminating Doe's parental rights is affirmed.

Chief Judge HUSKEY and Judge BRAILSFORD, **CONCUR**.