130 P.3d 1132 (2006)
142 Idaho 594
In the Interest of Jane DOE, a Child Under Eighteen Years of Age.
State of Idaho, Department of Health and Welfare, Human Services Division, Petitioner-Respondent-Respondent on Appeal,
v.
Jane Roe, Respondent-Appellant-Respondent on Appeal, and
Jane Doe, a child under eighteen years of age, Party in Interest-Appellant on Appeal.
No. 31563.
Supreme Court of Idaho, Boise, January 2006 Term.
February 27, 2006.
*1133 Dial, May & Rammell, Chtd., Pocatello, for appellant. Aaron N. Thompson argued.
Honorable Lawrence G. Wasden, Attorney General, Boise, for respondent State of Idaho. James P. Price argued.
John C. Souza, Pocatello, for respondent Roe. John C. Souza argued.
JONES, Justice.

I.
The Idaho Department of Health and Welfare (the Department) filed a petition to terminate Jane Roe's parental rights. The Department's only witness, a licensed social worker and Department employee, testified that it was not in the best interests of Roe or of the child, Jane Doe, to terminate the relationship. However, the magistrate judge granted the petition, finding that termination was in the best interests of both Doe and Roe. Roe appealed to the district court. The district court reversed because it found that the magistrate court's order was clearly erroneous. We agree with the district court and reverse the order of the magistrate court.

II.
Doe was born prematurely on May 31, 2001 in Preston, Idaho. Due to complications from her premature birth Doe and her mother, Roe, were transported to McKay-Dee Hospital in Ogden, Utah. Doe was subsequently diagnosed with spina bifada. While Doe was treated at McKay-Dee Hospital, Roe resided in the hospital's guest house. Roe was asked to leave the guest house because of several complaints that she was having parties in her room. McKay-Dee Hospital staff then contacted the Department because of concerns that Roe was not providing adequate care to Doe. Shortly thereafter, the Department intervened and placed Doe in shelter care. Dee Kiggins, a licensed social worker and Department employee, was assigned to the case and began the process of reuniting Doe with Roe.
At the time of Doe's birth, Roe was on juvenile probation. In August 2001, Roe received juvenile detention for violating her probation because of her behavior while at McKay-Dee Hospital. Thereafter, Roe lived in a group home. According to Kiggins, Roe called weekly to inquire as to Doe's well-being and would request more time with Doe than she was receiving. In December 2001, there was a six-month review hearing to determine the progress being made toward reunification. At this time, the magistrate court determined that Doe would remain in foster care while Roe was on juvenile probation. The judge also ordered a case plan for reunification, with a concurrent assessment of the foster parents as a permanent placement if reunification did not occur.
In February 2002, Roe began visits with Doe. These visits progressed from supervised visits, to unsupervised visits, then to overnight and extended ten-day and thirty-day visits. According to Kiggins, the visits went well. A twelve-month permanency hearing *1134 was held in August 2002. At that time the magistrate judge found that Roe had completed her case plan and Roe was released from juvenile probation. Additionally, Doe was placed with Roe under protective supervision. During this time, the Coles, Doe's foster parents, helped Roe by baby-sitting Doe while Roe worked and while Roe completed community service, by occasionally taking Doe to medical appointments, and by occasionally providing diapers for Doe.
In February 2003, Roe was arrested for selling methamphetamine to a confidential informant. After this incident Roe admitted that she had sold methamphetamine in the presence of Doe on one occasion and that she had used alcohol (Roe was not yet 21), marijuana, and methamphetamine while she had protective custody of Doe. Roe testified that her use of these substances occurred when Doe was not present. Roe later plead guilty to possession with the intent to deliver and was sentenced to three years fixed and four years indeterminate. This sentence was suspended and Roe was placed on six years' felony probation. Upon Roe's arrest, Doe was placed in foster care with Roe's sister and then with the Coles.
After Roe's arrest, she got married. She also began a new reunification plan under Kiggins' supervision. As part of this new plan, Roe, along with her husband, submitted to drug assessment and drug testing ordered by Kiggins and their probation officer. Both Roe and her husband thereafter took approximately three or four drug tests and they all came back negative. Additionally, the new reunification plan required that Roe receive only supervised visitation. Such visitation continued for a few months before Roe received unsupervised visitation and then overnight and extended visits. Kiggins testified that the next step in visitation would be a thirty day visit and then protective supervision for six months to a year.
A hearing was held in August 2003 to determine a permanent plan for Doe. In its subsequent order, the court found that Doe was out of the care and custody of Roe for eighteen of the last twenty-two months; however, there were compelling reasons not to pursue termination of parental rights.[1] Further, the magistrate judge ruled that it was not in the best interest of Doe or Roe to approve a permanent plan for termination and adoption. The court also found that, despite Roe's criminal activities, she had a strong emotional bond with Doe and she continued to do her best to provide appropriate parenting. The court then explained it would wait until Roe was sentenced before it decided on an appropriate permanent plan.
Roe was sentenced in September. The magistrate judge then held a review hearing in October 2003. At the review hearing, the court approved the permanent plan recommending termination of parental rights. However, the court also ordered the Department to continue efforts to reunify Roe and Doe. In November 2003 the Department filed its petition to terminate Roe's parental rights. At that time, the Department also petitioned to terminate the rights of Doe's father because he had previously appeared before the magistrate judge and consented to the termination of his parental rights.
In its petition, the Department argued that Roe neglected Doe and that termination was in the best interests of both Roe and Doe. However, at the termination hearing, the Department's only witness, Kiggins, testified that termination was not in the best interests of Roe or Doe. In opposition, the CASA (Court Appointed Special Advocates) advocate testified that it was in the best interests of Doe to remain with the foster parents and for Roe's parental rights to be terminated. The magistrate court ordered parental termination under I.C. § 16-2005(e) because it found that termination was in the best interests of both Roe and Doe. In doing so the judge dismissed Kiggins' testimony, observing that her testimony was based on emotion and that, out of over 100 child protection cases, Kiggins had never recommended termination. The judge also terminated the parental rights of Doe's father.
*1135 Roe appealed. The district court reversed the magistrate court's order. It found that there was insufficient evidence to uphold the magistrate court's findings and, consequently, that the court's order was clearly erroneous. Through her Guardian ad Litem, Doe appeals the district court's order. On appeal, the Department is advocating for Roe.

III.
A trial court may terminate a parent-child relationship when it determines there is clear and convincing evidence supporting the grounds for termination. Doe v. Roe, 133 Idaho 805, 807, 992 P.2d 1205, 1207 (1999) (citations omitted). On appeal, such a decision will be upheld unless the trial court's findings were clearly erroneous. Id. Therefore, an appellate court will uphold a trial court's findings if they are supported by substantial and competent evidence, even if such evidence is conflicting. Id. On review, all reasonable inferences are viewed in support of the trial court's decision. Id.
When the issues before this Court are the same as those previously considered by the district court sitting in an appellate capacity, we "will review the trial record with due regard for, but independently from, the district court's decision." Id. at 807-808, 992 P.2d at 1207-8 (citations omitted).

IV.
Idaho Code Section 16-2005(e) allows a court to grant an order terminating a parent-child relationship when the court finds "termination is ... in the best interest of the parent and child, where the petition has been filed by a parent or through an authorized agency, or interested party." In the current case, we are dealing with a unique set of circumstances. The Department, which is an authorized agency, petitioned to terminate Roe's parental rights to Doe. However, as it explained on appeal, the Department filed its petition under pressure from the magistrate judge and federal and state law. Both federal and state law require the Department to petition for parental termination when the child is in foster care for fifteen of the last twenty-two months unless a court finds compelling reasons not to file the petition. 42 U.S.C. § 675(5)(E); I.C. § 16-1623(i) (redesignated in 2005 as I.C. § 16-1629(9)). In the current case, Doe was out of Roe's care for eighteen of the last twenty-two months and the magistrate judge found that compelling reasons did not exist.[2] Therefore, despite its reluctance, the Department was obligated under the law to file its petition.
At trial, the Department's only witness, Kiggins, testified that termination was not in the child's best interest. Kiggins is a trained and licensed social worker, has intimate knowledge of the case, and was the only witness with knowledge of the family situation. Therefore, her testimony should have had a significant impact in the proceedings. On appeal, the Department expressed its discontent with the magistrate court's order and argued that there was no evidence to support the finding that termination was in Roe's or Doe's best interest.

V.
The magistrate court's finding that termination was in the best interests of Roe and Doe was clearly erroneous. First, the magistrate judge erred in focusing upon Roe's conviction and other past criminal behavior while dismissing relevant and competent evidence. Roe's past criminal behavior is certainly relevant in considering whether to terminate her parental rights. See In Interest of Dayley, 112 Idaho 522, 526, 733 P.2d 743, 747 (1987) (past character evidence may be relevant in determining future behavior). However, in light of the other evidence presented, it does not constitute sufficient and competent evidence to support the magistrate court's findings for termination. Doe v. State, 137 Idaho 758, 761, 53 P.3d 341, 344 (2002) (a father's incarceration throughout the child's life was not sufficient and competent *1136 evidence to support parental termination).
The magistrate judge also erred in dismissing Kiggins' testimony. The judge opined that Kiggins' testimony was unreliable because it was unsubstantiated, "based almost exclusively on emotion ... [and was] not grounded in the best interest of [Roe] or [Doe]," and because out of over 100 cases Kiggins never recommended termination. This reasoning is flawed. First, it is beyond dispute that basic witness testimony does not have to be substantiated to be truthful. Even if it were, Kiggins' testimony was substantiated by the testimony of other witnesses. Additionally, without evidence that Kiggins wrongfully made recommendations, her other cases are not relevant in determining her credibility as a witness. Further, there was no evidence that Kiggins failed to act in the best interests of Roe or Doe.
Moreover, a trial court cannot disregard a witness' testimony simply because the witness was emotional. While emotion may go towards the demeanor of a witness, it does not necessarily affect the witness' credibility. We have previously held that a trier of fact may not arbitrarily or capriciously disregard the "the positive, uncontradicted testimony of a credible witness." Dinneen v. Finch, 100 Idaho 620, 626-627, 603 P.2d 575, 581-82 (1979) (citations omitted). In fact, the trier must accept such testimony as the truth unless the testimony was either "impeached by any of the modes known to the law" or it was "inherently improbable, or rendered so by facts and circumstances disclosed at the hearing or trial." Id. (citations omitted).
In the current case, Kiggins' testimony was neither impeached nor inherently improbable. The only testimony offered in support of termination was that of Vickie Raymond, the CASA worker. However, Raymond's entire testimony was based upon Roe's criminal record and Raymond's observations of Roe which occurred almost two years prior to the termination hearing. Raymond admitted that she was unsure whether or not Roe could provide for Doe's needs at the time of the hearing. The magistrate judge did not cite to any of Raymond's testimony in his findings. On the other hand, Kiggins' testimony was confirmed by the record and the testimony of other witnesses. In its August 2003 order, the magistrate court's findings supported Kiggins' position. At that time, the judge found that Roe and Doe had a strong emotional bond, that Roe did her best to provide appropriate parenting to Doe, and that the case plan to reunite mother and daughter "proceeded satisfactorily." Additionally, Kiggins' testimony was corroborated by the testimony of Jay Heusser, Roe's probation officer, and Scott Shaw, Preston's chief of police. Thus, the magistrate judge erred in disregarding Kiggins' testimony.
When considering all of the evidence, including Kiggins' testimony, it is clear that the evidence does not support the magistrate court's findings that Roe was "unable to manage her own life," that she "[could] not ... mature," and that terminating her relationship with Doe would be in her best interests because it would enable her to better care for her other two children (her husband's child and one of their own born in February 2004) and more fully comply with her probation.
We have never recognized the quantity of children as a relevant factor in determining whether to terminate a parental relationship and we refuse to do so today. Additionally, the ability of a parent to mature, in and of itself, is not sufficient to terminate a parental relationship. Even if it were, the record does not support a finding that Roe could not mature. In fact, the record shows that Roe had matured and was able to manage her own life and care for her children. As explained by Kiggins, Heusser, and Shaw, Roe created a stable life, made her children her priority, successfully complied with and went beyond the court orders and the reunification plan, attended counseling and Alcoholics Anonymous and Narcotics Anonymous meetings, and was not likely to relapse or become involved with criminal activity again. Further, contrary to the magistrate court's findings, the evidence indicates that Doe and the parental termination action were a motivating factor in Roe's decision to straighten out her life and for Roe's successful compliance with the reunification plan and probation.
*1137 The record also lacks evidence that terminating Roe's parental relationship was in Doe's best interest. Contrary to the magistrate court's finding, reunification between Roe and Doe was possible and was occurring, according to Kiggins' uncontradicted testimony. The record reveals that Roe and Doe had a strong emotional bond, that interactions between Roe and Doe were both positive and healthy, and that Roe could adequately care for Doe. Additionally, Roe went above and beyond the case plan in order to provide appropriate parenting to Doe.
Consequently, the record lacks sufficient and competent evidence to uphold the magistrate court's findings that termination was in Roe's and Doe's best interest. As explained by the Department, public policy requires us to overturn a parental termination where the parent fully complied with the Department's reunification plan and any court directives.

VI.
The magistrate division also erred in making what appears to be a subjective, rather than an objective decision. In family law cases, there is a "requirement of explicit findings [which] encourages a trial judge to rely upon objectively supportable grounds for his decision, and discourages subjective or attitude-influenced perceptions of the case. Without [an] objective basis, trial court fact-finding [becomes] ... a soft spot in the administration of justice." Donndelinger v. Donndelinger, 107 Idaho 431, 437, 690 P.2d 366, 372 (Ct.App.1984). As illustrated above, there are great inconsistencies in the magistrate court's findings and legal conclusions. With the same facts before it, the judge came to conflicting factual findings and legal conclusions regarding the best interests of Roe and Doe. It is not clear how or why this occurred. The Department's counsel observed at oral argument that he was "not aware of anything from February 2003 until the time of trial in January 2004 that would have supported termination." The record does not disclose any facts upon which a best interest termination might be based.
Accordingly, the magistrate court's order terminating Roe's parental rights is reversed and the case is remanded for further proceedings consistent with this opinion.
Chief Justice SCHROEDER and Justices TROUT and BURDICK concur.
Justice EISMANN, concurring in the result.
The magistrate judge was required to find that termination of Jane Roe's parental rights was "in the best interest of the parent and child." I.C. § 16-2005(3). The magistrate concluded that termination would be in the best interest of Jane Roe because terminating her parental rights "dramatically enhances her chances of maintaining her relationship with her new child and completing felony probation."
The magistrate simply held that terminating Roe's parental rights in one child would give her more time to spend with her other child, and therefore termination was in Roe's best interests. That rationale would apply to all parents with more than one child. It is based upon the unsupportable assumption that it is in a parent's best interests to have no more than one child because the parent may have to divide his or her attention between or among the children.
The magistrate also concluded that terminating Roe's parental rights would enhance her chances of completing felony probation. There was nothing in the record indicating that having the child at issue would in any way interfere with Roe's ability to comply with the terms of her probation.
The magistrate's conclusion that termination was in the best interests of Roe is not supported by substantial and competent evidence. Therefore, I agree that the judgment must be reversed.
NOTES
[1] This order was inadvertently left out of the record on appeal. However, the magistrate judge summarized the order in an October 2003 order and the Department's counsel read a portion of the order to this Court during oral argument.
[2] In his October 2003 order the magistrate judge noted that he had found in August that compelling reasons did exist but apparently changed his mind. The only change in circumstances noted by the judge was that Roe had been sentenced and placed on probation for the offense, which the court was aware of in August because Roe entered a guilty plea in June.