**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 48619**

| | | |
|---|---|---|
| In the Matter of: Jane Doe I, A Child Under Eighteen (18) Years of Age. | ) ) | |
| STATE OF IDAHO DEPARTMENT OF HEALTH AND WELFARE, | ) ) | **Filed: June 4, 2021** |
| | ) | |
| Petitioner-Respondent, | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| v. | ) ) | **THIS IS AN UNPUBLISHED OPINION AND SHALL NOT** |
| JOHN DOE (2021-06), | ) | **BE CITED AS AUTHORITY** |
| | ) | |
| Respondent-Appellant. | ) ) | |

Appeal from the Magistrate Division of the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Mayli A. Walsh, Magistrate

Judgment terminating parental rights, <u>affirmed</u>.

Douglas A. Pierce, Coeur d' Alene, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Denise L. Rosen, Deputy Attorney General, Coeur d' Alene, for respondent.

HUSKEY, Chief Judge

John Doe (Father) appeals from the magistrate court's order terminating his parental rights. Father alleges that the magistrate court erred in terminating his parental rights because the Idaho Department of Health and Welfare (Department) failed to show that Father neglected R.S. and that termination of his parental rights is in the best interests of the child. Because substantial and competent evidence supports the magistrate court's findings that Father neglected R.S. and termination of Father's parental rights is in the best interests of the child, the judgment terminating Father's parental rights to R.S. is affirmed.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

R.S. was born to Mother and Father, unmarried parents, on July 20, 2007. For the next eleven years, R.S. remained in Mother's custody while Father resided out of state. After a visit with R.S., Father reported to the Department that he witnessed Mother using drugs in the presence of her children. Because of the Department's concerns of Mother's neglect of her children and her failure to provide a stable home environment, the Department filed a Child Protection Act petition and four of Mother's children, including R.S., were taken into care.[1] The magistrate court held shelter care and adjudicatory hearings, found that R.S. had been subjected to an unstable home environment, and vested temporary legal custody of R.S. to the Department.

The magistrate court ordered a case plan for Father. The case plan identified concerns about Father's lack of relationship with R.S. and the Department's lack of information about Father's history and ability to care for a child. Broadly speaking, the case plan required Father to: (1) gradually and appropriately build a relationship with R.S.; (2) complete a comprehensive assessment, which would include review of Father's ability to provide a safe and stable home for R.S. and Father's criminal, substance use, mental health, and financial history; and (3) comply with the Interstate Compact for the Placement of Children (ICPC) and complete a home study in his state, as he resided in Texas and Georgia during the child protection action. The case plan noted that if Father's state denied the ICPC, R.S. could not reside with Father.

The Department filed for termination of Father's parental rights alleging that he neglected and abandoned R.S. and that termination of Father's parental rights would be in the best interests of the child.[2] The magistrate court held a termination trial which Father did not attend, but he was represented by counsel at the proceeding. After testimony from R.S. and a case supervisor at the Department, the magistrate court found clear and convincing evidence that Father neglected R.S. and that termination of his parental rights would be in the best interests of the child. Accordingly,

---

[1]     Father is not the father of Mother's other children; consequently, this case only concerns R.S.

[2]     The petition also sought termination of Mother's parental rights to R.S. and three of her other children, as well as one of the other children's father's parental rights. The district court ordered termination of two of these parties' parental rights. Neither of these are the subject of this appeal.

the magistrate court entered a judgment terminating Father's parental rights to R.S. Father timely appeals.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *In re Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five

3

factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

## III.

## ANALYSIS

Father alleges substantial and competent evidence does not support the magistrate court's findings that he neglected R.S. and termination of his parental rights is in the best interests of the child. In response, the State contends that substantial and competent evidence supports the magistrate court's findings that Father neglected R.S. and termination of his parental rights is in the best interests of the child.

A.      **Substantial and Competent Evidence Supports the Magistrate Court's Finding That Father Neglected R.S.**

Father makes two arguments on appeal. First, Father argues that "just cause" should be a viable defense to allegations of neglect and, accordingly, this Court should overturn *Idaho Dept. of Health & Welfare v. Doe*, 151 Idaho 498, 260 P.3d 1169 (2011). Second, Father alleges that in order to terminate his parental rights pursuant to the statutory grounds of neglect, the Department was required to establish that he is unable to discharge parental responsibilities for a prolonged period which will be injurious to the health, morals, or well-being of the child. Father asserts that because he maintains stable housing and employment and has a relationship with R.S., "albeit a bit of a different one given the circumstances of his physical distance," the Department did not show that he is unable to discharge his parental duties. Therefore, he argues that the magistrate court's finding of neglect is not supported by substantial and competent evidence.[3] We are not persuaded by either argument.

First, we decline to consider Father's argument that "just cause" should be a viable defense to allegations of neglect. Father did not raise this argument before the magistrate court and

---

[3]      Father additionally asserts he did not abandon R.S. Although the Department initially alleged that Father had abandoned R.S., the Department indicated prior to trial that it would not be pursuing that ground as a basis for terminating Father's parental rights. Accordingly, the magistrate court did not make a finding of abandonment. Thus, whether Father abandoned R.S. is irrelevant to the issues on appeal.

4

generally, issues not raised below may not be considered for the first time on appeal. *Sanchez v. Arave*, 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991). Additionally, neither trial courts nor this Court are free to disregard precedents of the Idaho Supreme Court. *Craig v. Gellings*, 148 Idaho 192, 195, 219 P.3d 1208, 1211 (Ct. App. 2009). This Court cannot overturn Idaho Supreme Court precedent and, as such, there remains no just cause defense to an allegation of neglect in an action seeking termination of an individual's parental rights.

Second, Father's allegation that the Department was required to establish that he is unable to discharge parental responsibilities in order to establish that he neglected R.S. is a misunderstanding of the statutory grounds on which his parental rights were terminated. Statutory grounds for termination of parental rights include: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) inability to discharge parental responsibilities for a prolonged period, which will be injurious to the health, morals, or well-being of the child; or (e) incarceration for a substantial period of time during the child's minority. I.C. § 16-2005. Father's parental rights were terminated pursuant to subsection (b), not subsection (d). As each ground is an independent basis for terminating parental rights, the Department was not required to establish that Father was unable to discharge his parental duties in order to show that he neglected R.S.

Here, the Department asserted, and the magistrate court found, that Father neglected R.S. Idaho Code Section 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for her well-being because of the conduct or omission of her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

The magistrate court found that Father neglected R.S. under both definitions of neglect. First, the magistrate court found that, pursuant to I.C. § 16-1602(31)(a), Father neglected R.S. because he lacked proper parental control. The magistrate court found, by clear and convincing evidence, that Father failed to: (1) maintain a normal relationship with R.S. for the duration of the

5

child protection case; (2) provide proof of stable, safe, and appropriate housing for R.S.; (3) demonstrate he could safely parent R.S. free from the use of controlled substances; (4) provide proof he could financially support R.S. or proof of meaningful employment; and (5) show he was able to provide a safe, sober, and stable environment for R.S.

Second, the magistrate court found that, pursuant to I.C. § 16-2002(3)(b), Father neglected R.S. because he did not comply with the case plan and the Department had custody of R.S. for more than fifteen of the most recent twenty-two month period. Specifically, the magistrate court found clear and convincing evidence showed that Father did not cooperate with the Department, obtain appropriate housing, demonstrate appropriate sobriety and address any mental health concerns, regularly submit to testing for the presence of drugs and alcohol, and maintain contact with R.S, despite such tasks being required by his case plan.

Father's neglect of R.S. by failing to provide proper parental control and failing to comply with a case plan were the only relevant statutory bases for termination of Father's parental rights to R.S. Because Father's arguments on appeal do not address the bases on which the magistrate court found there was a statutory basis to terminate Father's parental rights, he waived his claim that the magistrate court erred by finding a statutory basis to terminate his parental rights. *See Rich v. State*, 159 Idaho 553, 555, 364 P.3d 254, 256 (2015) (holding appellate court must affirm lower court's decision when appellant leaves grounds for which court made ruling uncontested).

However, even if we were to read Father's assertions that he maintains stable housing and employment and has a relationship with R.S. as a challenge the magistrate court's finding that he neglected R.S. by failing to provide proper care and control, his claim fails for two reasons. First, Father does not challenge the magistrate court's finding that he neglected R.S. by not complying with the case plan. Accordingly, we affirm the magistrate court's finding of neglect on this unchallenged basis. *See id.*

Second, Father's assertions that he maintains stable housing and employment and has a relationship with R.S. are not supported by the record. R.S. was taken into protective custody on or about August 9, 2018; a petition to terminate parental rights was filed on July 18, 2019; and the termination hearing was held January 27, 2021. During the termination trial, no evidence was admitted showing Father's ability to maintain stable housing and employment. In fact, despite the case plan requiring Father's cooperation with ICPC, the evidence presented at the termination trial was that ICPC had been denied because of Father's refusal to cooperate and, as such, the

Department was not able to assess Father's ability to provide a safe, stable, and healthy home for R.S. Accordingly, the Department had no information about Father's ability to safely parent R.S. or the safety and stability of his home environment. Thus, Father's failure to cooperate with the ICPC resulted in Father's failure to present any evidence to the magistrate court about Father's ability to meaningfully parent R.S.

Additionally, during the termination trial, reports from the Department were admitted that showed Father's failure to maintain a meaningful relationship with R.S. These reports described a limited relationship between Father and R.S.; despite being thirteen-years-old at the time of trial, Father had only seen R.S. in person three times and during the most recent contact, R.S. reported that Father was intoxicated and he was asked to leave. All of the visits occurred prior to R.S.'s placement into protective custody. Further, the reports described R.S. being "very uncomfortable" around Father and not wanting to spend time with him. Testimony during the termination trial echoed these sentiments. The supervisor from the Department who was assigned to the case testified that Father does not have a relationship with R.S, met R.S. in person only three times, and has made no effort to maintain contact with R.S. throughout the pendency of the child protection action.[4]

Based on the lack of assessment of Father's ability to provide a safe and stable environment for R.S. and the absence of a meaningful relationship between Father and R.S., the case supervisor testified that if R.S. was to reside with Father, it would cause "significant concern." As such, the magistrate court's findings that Father neglected R.S. by failing to provide proper parental control under the standards articulated in I.C. § 16-1602(31)(a) is supported by substantial and competent evidence.

**B.     Substantial and Competent Evidence Supports the Magistrate Court's Finding That Termination of Father's Parental Rights to R.S. is in the Best Interests of the Child**

Father alleges that the Department did not establish that termination of his parental rights to R.S. is in the best interests of the child. Specifically, Father argues:

> There was no evidence presented at the trial establishing that severing the father-daughter relationship would be anything but needed for the child to be adopted. The child knew that Doe is her father, and they did not have a close

---

[4]     There was some evidence presented at the termination trial that Father called R.S. on the telephone and via Skype and had written R.S. some letters, but R.S. had only read one letter because Father made her feel uncomfortable.

relationship. It cannot be said that it would be in the child's best interest to terminate the father-daughter relationship.

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

Here, the magistrate court found the termination of Father's parental rights to R.S. is in the best interests of the child; termination would provide R.S. with permanency and stability, allow her to remain in a home where she had been thriving, and with future adoptive parents who are aware of and can care for her specific needs. A review of the termination trial record demonstrates these findings are supported by substantial and competent evidence.

As discussed above, Father provided no evidence that he was interested in completing the case plan or taking steps to demonstrate that he could safely parent R.S. Further, the testimony during the termination trial was that termination of Father's parental rights would provide R.S. with permanency, stability, and safety. The case supervisor testified that the majority of R.S.'s life was unstable during foster care. While the reports admitted as evidence during trial indicate that R.S. initially struggled with being in the Department's care, especially when Mother did not show up for scheduled visits, the case supervisor described that R.S. began to open up more since coming into care and is now "thriving in her current environment" where she feels safe, supported, and can have regular visitations with her half-siblings. The case supervisor testified that R.S.'s foster home is one of the Department's longest licensed foster homes, and the foster parent has completed all the required trainings and regularly works with the Department to provide care that is tailored to R.S.'s functioning and understanding. On the date of the termination trial, R.S. had been in the Department's care for over 900 days and, during this time, R.S. never had an extended home visit or overnight with either Mother or Father.

8

Finally, the evidence presented at the termination trial was that termination of Father's parental rights would be in R.S.'s best interests. The case supervisor testified that she believed Father's parental rights should be terminated because he had "no relationship with this child," did not make an attempt to develop a relationship with R.S. while she was in foster case, and has not complied with his case plan, which would allow for the Department to assess Father's ability to safely parent R.S. The case supervisor concluded that R.S. is "safe and stable in the home that she's been in consistently for three years, nearly three years," where she is able to maintain stable relationships with her half-siblings. Similarly, the court appointed special advocate for children[5] told the magistrate court that it is in the best interests of R.S. to terminate Father's parental rights. And, R.S. testified that she wanted Father's parental rights to be terminated because termination would provide her with a safe home, permit her to stay in an environment that was better for her well-being, and would allow her to be adopted by her foster family. Taken together, the evidence presented during the termination trial provided substantial and competent evidence to support the magistrate court's finding that termination of Father's parental rights to R.S. is in the best interests of the child.

## IV.
## CONCLUSION

Substantial and competent evidence supports the magistrate court's finding that Father neglected R.S. and termination of Father's parental rights to R.S. is in the best interests of the child. Accordingly, the judgment terminating Father's parental rights is affirmed.

Judge LORELLO and Judge BRAILSFORD **CONCUR**.

---

[5] This individual also served as R.S.'s attorney during the termination trial.

9